RECORD NUMBER: 13-1877

# United States Court of Appeals
### *for the*
# Fourth Circuit

STEPHEN KREIN,

*Appellee,*

– v. –

L.W. PRICE,
**individually and in his official capacity**

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

# BRIEF OF APPELLEE

RICHELLE KEENER GARLOW
MICHAEL THANE CLIFFORD
LAW OFFICE OF MICHAEL T. CLIFFORD
723 Kanawha Boulevard East
Union Building, Ste. 1200
Charleston, WV 25301
(304) 720-7660

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1877__    Caption: __Stephen S. Krein v. Trooper L.W. Price and WVSP, et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Trooper L.W. Price, individually and in his official capacity__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
      (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                          ☐ YES ☑ NO
     If yes, identify all such owners:

- 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Michael D. Mullins _____    Date: _____ 7/24/2013 _____

Counsel for: Trooper L.W. Price _____

## CERTIFICATE OF SERVICE
*************************

I certify that on _____ 7/24/2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Michael T. Clifford, Esquire
Richelle Garlow, Esquire
723 Kanawha Boulevard, East
Union Building, Suite 1200
Charleston, WV 25301

/s/ Michael D. Mullins _____
(signature)

_____ 7/24/2013 _____
(date)

# **TABLE OF CONTENTS**

Corporate Disclosure Statement

Table of Authorities ........................................................................... ii

Jurisdictional Statement .................................................................. 1

Statement of the Issues................................................................... 1

Statement of the Case..................................................................... 1

Statement of the Facts .................................................................. 3

Summary of Argument.................................................................... 7

Argument....................................................................................... 9

    a.  Trooper Price Is Not Entitled To Qualified Immunity Because His Actions Were Objectively Unreasonable ............................................ 9

    b.  It Was Well Established On The Day Of The Shooting That Deadly Force May Not Be Used To Effectuate A Misdemeanor Arrest ................................................................................. 13

Conclusion ................................................................................. 16

Certificate of Compliance

Certificate of Service

i

# TABLE OF AUTHORITIES

## Cases

*Graham v. Connor*,
  490 U.S. 386 (1989)........................................................................ 9

*Holloway v. Moser*,
  193 N.C. 185, 136 S.E. 375 (1927) .................................................. 13

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985)........................................................................ 1

*Pena v. Porter*,
  316 F. App'x. 303 (4th Cir. 2009) .................................................... 12

*Robles v. Prince George's County*,
  302 F.3d 262 (4th Cir. 2002) ............................................................ 16

*State v. Smith*,
  127 Iowa 534, 103 N.W. 944 (1905).................................................. 13

*Tennessee v. Garner*,
  471 U.S. 1 (1985)........................................................................ 7, 13

*Waterman v. Batten*,
  393 F.3d 471 (4th Cir. 2005) ................................................... 9, 10, 14

## Rules, Statutes, and Other Authorities

28 U.S.C. § 1291 ............................................................................... 1

42 U.S.C. § 1983 ............................................................................... 2

Fed. R. Civ. P. 12(b)(6)....................................................................... 2

United States Consitution, Fourth Amendment ........................................... 16

## JURISDICTIONAL STATEMENT

Appellee's brief is due January 6, 2014 and is timely filed. This case is an appeal of the District Court's denial of summary judgment on the basis of qualified immunity**,** of which this Court has jurisdiction under 28 U.S.C. §1291, but only insofar as the issue turns on a point of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

## STATEMENT OF THE ISSUES

(1)    Whether the district court erred in finding that the evidence as a whole did not clearly establish that Trooper Price's use of deadly force[1] was objectively reasonable and denying Appellant's motion for summary judgment.

(2)    Whether it was clearly established to a reasonable police officer on December 1, 2008, that, facing the circumstances that Trooper Price faced, his conduct was objectively unreasonable.

## STATEMENT OF THE CASE

Appellee Stephen Krein filed an excessive force suit in the Circuit Court of Kanawha County after being shot in the right side of his head by Appellant L.W. Price, a member of the West Virginia State Police. J.A. 9.  Krein maintains that the evidence shows that Price did not shoot him to avert danger or to protect himself or others, but merely because Krein attempted to flee. The first, inartfully drafted

---

[1]Trooper Price shot Stephen Krein, the plaintiff/appellee in the head. Though Krein survived, the term "deadly force" is used, because a bullet in the head is, of course, often fatal.

Complaint was amended following a Motion to Dismiss by the Defendants, and included a federal excessive force claim under 42 U.S.C. 1983. J.A. 17.[2]    The defendants then removed the case to the United States District Court for the Southern District of West Virginia. Claims against Trooper Snyder were dismissed following a Motion to Dismiss under Rule 12(b)(6). Following a lengthy discovery phase, defendants moved for summary judgment, which granted summary judgment as to Krein's claim of negligent hiring by the West Virginia State Police, but otherwise denied the motion. J.A. 72. The defendants' Motion for Summary Judgment relied upon qualified immunity. However, District Court Judge Copenhaver, upon review of the facts, found that there existed discrepancies and disagreement of the facts, that a jury could find that Mr. Krein was shot for trying to escape capture, rather than in self- defense or defense of others, and that summary judgment was thus inappropriate. J.A. 84.  Defendants appeal from that Order Denying Summary Judgment.

---

[2]Appellants place much emphasis on the original Complaint, contending that the language within the complaint amounts to admissions. Though facts in the amended complaint were changed or omitted to more accurately reflect Krein's version of events, he has never denied that he was being sought by law enforcement for the service of warrants. The original Complaint quoted the language of Trooper Price's own report of the shooting. However, even if the facts as stated in the original Complaint were taken as true, the fact remains that Trooper Price's actions were not that of a reasonable officer protecting himself or others but were only intended to stop Krein from fleeing from the service of misdemeanor warrants.

## STATEMENT OF THE FACTS

On December 1, 2008, Trooper Price and Trooper Snyder of the West Virginia State Police were looking for the appellee, 19 year-old Stephen Krein. The purpose of their manhunt was to serve misdemeanor warrants on Krein. Some of the warrants arose from an incident approximately one week prior in which other members of the WVSP attempted to arrest Krein on misdemeanor warrants, and he escaped capture. The WVSP claim that during this incident, Krein tried to run over Trooper McCord; however, Krein was not charged with any felonies or attempted felonies, but with misdemeanor assault and battery on an officer, along with obstruction, fleeing, reckless driving, driving on a revoked license, no license plate, no insurance, and no headlights. Indeed, all active warrants pending service that evening were for misdemeanor offenses.

Troopers Price and Snyder sought out Krein on the night of December 1, 2008. Price's shift had not even begun yet, but he was intent on finding Krein. J.A. 40. The officers found him at Huffman's Country Store, a small gas station and convenience store near Walton, West Virginia. The officers pulled their cruiser in, according to their statements, at an angle, making a triangle with the gas pumps, the cruiser, and Krein's truck. J. A. 42, 52. Another civilian vehicle was on the left side of Krein's truck. When Krein saw the cruiser was attempting to block him in, he began trying to maneuver his truck in such a way as to escape through an

3

opening. J.A. 42. Per Trooper Price's own statement, Krein was trying to get out

J.A. 43, 44. He repeatedly backed up and cut his wheel, executing "K" turns in

order to get away. The Troopers got out of their car, drew their guns and repeatedly

ordered Krein out of his truck. Krein refused the orders. The following occurred,

according to Price's statement in the investigation following the shooting

(emphasis added):

> **Price**: Snyder exited immediately. I got out. As I was coming around
> the back of the vehicle, he was coming into my cruiser. And I thought,
> I didn't know if he was going to try to push my cruiser out of the way.
> But I remember Snyder got out, the door was open. And **I remember
> him pushing the door shut with his, with the truck**. He backed up
> and was cutting his wheel to come out in between a small opening. He
> was trying to get out.
> ...
> I was walking, Snyder was located on the driver side. We immediately
> started saying "Stop, stop, get out, get out of the vehicle, get out of the
> vehicle". When we saw, when I saw, after I saw him push into my
> cruiser and back up that's when I drew my service pistol.
> ...
> We gave him verbal commands, "stop, stop, get out, get out of the
> vehicle, stop the vehicle, get out of the vehicle. He backed up, he
> started forward. I had already come around. After he pushed my door
> shut, he backed up, I had already come around I wanted to get on the
> other side of the door in case he tried to get out and run. He started
> coming forward. I had already come around. **After he pushed my
> door shut he backed up**, I had already come around **I wanted to get
> on the other side of the door in case he tried to run.** He started
> coming forward.
>
> **Sgt. Lively**: So when you say the other side, you come around from
> the driver side of your cruiser around the back to the passenger, more
> or less to the passenger side of the cruiser?

4

**Price**: Yes sir.

**Sgt. Lively**:. In between your cruiser and his truck?

**Price**: Yes sir.

J.A. 43.

...

Ah, as he, as I knew he was coming forward I knew that he wasn't going to stop. I knew my vehicle was right behind me. **I knew he was coming out of there.** Ah on my way up I fired one round. I saw, as soon as I fired one round I said "stop, stop, get out, get out of the vehicle". Constantly giving commands. J.A. 44.

...

**The best I can remember I was coming up, I fired coming up. I was excited. I was cold.** Somewhere possibly in the grill area of the vehicle.

...

**As soon as that happened I saw him duck down over the side of the vehicle.**

**Sgt. Lively:** He laid over across the seat?

**Price: He laid over across to avoid being hit**. And he continued coming forward. And I backed up when I fired my second shell I backed up. I fired one more shot into the vehicle. And I tried the best to get out of the way because I didn't have anywhere to go.

...

**I fired my second shot I got out of the way and I observed the vehicle slow down. And got in between our vehicle and the maroon and he got out on the road but was moving very slowly.**

J.A. 45

The bolded passages indicate several things. One, Stephen Krein did not ram or "crash" into the police cruiser, but simply bumped the door shut. Two, Price was extremely concerned that his suspect was going to evade arrest yet again, and by

5

his own admission, knew that was Krein's intent.[3] Three, despite the description of events suggesting that the area was confined and cramped, trapping Price between Krein's truck and the cruiser, following the shooting, Krein's truck rolled unimpeded through the opening between the cruiser and the civilian vehicle and came to rest on the roadway. Finally, Price's own statement conflicts with the known facts. Price alleges that, following the first, apparently unintentional, excited shot at the front of the truck,  Krein "laid down across the seat" before Price fired the second round. This allegation does not comport with the fact that

---

[3]Price makes reference to Krein attempting to get away on multiple occasions throughout his statement:

> Price: "I immediately pulled my cruiser in at an angle so he couldn't get out" (J.A. 42).

> Price: "As soon as I pulled in... I saw him looking left and right fast..."
> Lively: "Did that indicate to you that he was looking for a way out?"
> Price: "Yes sir." (J.A. 43).

> Price: "I remember him pushing the door [of the cruiser] shut with his, with the truck. He backed up and was cutting his wheel to come out in between a small opening. He was trying to get out." (J.A. 43).

> Price: "After he pushed my door shut he backed up, I had already come around I wanted to get on the other side of the door in case he tried to get out and run." (J.A. 43).

> Price: "Ah, as he, as I knew he was coming forward I knew he wasn't going to stop. I knew my vehicle was right behind me. I knew he was coming out of there."(J.A.44).

Krein was shot in the right side of his head, through the passenger side window of his truck. At best, this discrepancy illustrates the murky, disputed facts that exist in this case.

Stephen Krein lived through the bullet wound to his head. However, he is now a severely impaired, wheelchair-bound invalid, unable to care for himself or even to speak intelligibly. The warrants that allegedly motivated the events of that evening were never served and ultimately, all charges were dismissed.

## SUMMARY OF ARGUMENT

The Court must decide two things: (1) whether the officer's conduct violated a constitutional right of the plaintiff, and (2) whether that right was "clearly established" at the time of that conduct. It is well established that officers may not use deadly force to effectuate the arrest of a suspect unless that suspect presents a danger to the officer or others. The seminal case of this principle is *Tennessee v. Garner,* 471 U.S. 1 (1985), in which the United States Supreme Court ruled that the shooting of a fleeing felon who posed no danger to others was unconstitutional.

In the case at bar, the district court did not err in its conclusion that the facts do not undisputedly support Price's contention that he feared for his safety or that of others. Since this Court may not consider factual determinations on an

interlocutory appeal on the denial of summary judgment, the appeal should be dismissed.

In considering whether to extend qualified immunity, a court must consider whether an objectively reasonable officer, placed in Trooper Price's shoes and taking all of the circumstances together, would have reasonably believed that Stephen Krein was an immediate danger to the officers or others and acted as Price did.. The District Court found that the facts, taken in the light most favorable to Krein, did not establish that Price acted reasonably.

Lastly, a reasonably well-trained officer would have been aware of the long-standing principle that a suspect must not be shot in order to prevent him from fleeing unless he is an immediate threat to others. This was a well established axiom of police work at the time of the shooting of which Price would have been aware.

# ARGUMENT

### a. Trooper Price is not entitled to qualified immunity because his actions were objectively unreasonable.

The test of objective reasonableness in Fourth Amendment excessive force cases. *Graham v. Connor,* 490 U.S. 386, 396 "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation." 396-397.

The district court below recognized and utilized this principle in reaching its decision to deny summary judgment. J.A. 82. The Court also recognized that excessive force cases should be carefully analyzed while keeping in mind the "split-second judgments" officers must make, and avoid the "use of hindsight". J.A. 83, citing *Waterman v. Batten,* 393 F.3d 471, 476-477 (4th Cir. 2005).

The District Court rejected the appellants' argument that the record clearly established that Trooper Price feared for his life and that of Trooper Snyder. The Appellants contend that the District Court's denial of summary judgment was based on an improper consideration of Trooper Price's subjective motivations. In

9

analyzing the reasonableness of an officer's actions in a Fourth Amendment excessive force claim, his subjective motivations are indeed irrelevant. *Id.* However, this Court recognized in *Waterman v. Batten,* 393 F.3d 471 (4th Cir. 2005) that an officer's knowledge at the scene is relevant. 477. What Trooper Price knew was that Krein had a history of escape and was trying to do so again. The discussion in the District Court's decision regarding Price's obvious intent to thwart Krein's escape was relevant, but was not the only basis for its analysis of the facts and circumstances at the time of the shooting, as interpreted in the light most favorable to the plaintiff.

It is undisputed that Trooper Snyder was standing at the driver's side door of the truck. The District Court pointed out that the evidence suggests that neither officer was in front of the truck when Price shot Krein. J.A. 84.  Though the Court found the evidence unclear as to Price's exact location at the time of the shot, "evidence tends to suggest that Trooper Price would have been at or near the passenger side of the truck when the second shot was fired into that window". J.A. 77. In addition, the Court noted Price's statement that Trooper Snyder would be in danger if the Krein "cut a hard left", but that Snyder had moved safely away from the truck. J.A. 78. The contention that Price was in a position to be pinned between Krein's truck and the cruiser is likewise disputed by the fact that, after Krein was

10

shot, his truck rolled forward on its own and coasted in between the two cars without striking either one. J.A. 45. Thus, the Court fairly reasoned that, based upon the evidence presented, the Court could not conclude that an objectively reasonable officer would have believed that Krein posed a safety threat to himself, Trooper Snyder, or any other person, and properly denied summary judgment.

In their brief, appellants repeatedly assert that Price's actions were not only to protect himself and Trooper Snyder but also the occupants of two other cars on the lot. However, Price's own statement shows that he had barely noticed the other vehicles, let alone whether they were occupied:

> **Sgt. Lively**: Were there any other vehicles on the parking lot that you remember?
>
> **Price**: There was a few vehicles there. I saw a few vehicles, didn't pay attention to anybody in them though.
>
> **Sgt. Lively**: You didn't see anyone standing outside or any vehicle outside. You were more or less focused on him.
>
> **Price**: I was focused on him. I do know there was a maroon car that he was parked beside. As far as any other cars right beside him that was the only one.

11

J.A. 42.

The *objective facts* of this case, as discerned by the District Court, are that 1)Stephen Krein was wanted for misdemeanor crimes; 2) Troopers Price and Snyder set out to find him and located him at a gas station, backed into the parking lot and facing the road; 3)the troopers pulled their cruiser in at an angle near or in front of Krein's truck; 4)There were gas pumps on one side of the truck and a civilian vehicle on the other; 5) the troopers got out of their cars, guns drawn, and ordered Krein out of his truck; 5)Krein refused the orders and tried to escape arrest in his truck by attempting to get out past the cruiser, striking a diesel pump and then bumping closed the cruiser door; and 6)Price shot Krein through the passenger side window of his truck, striking him in the head.

The District Court opined that there existed a genuine issue of material facts and objective reasonableness had not been established.  J. A. 84. Without a finding of objective reasonableness, the excessive force used by Trooper Price against Stephen Krein in an attempt to effectuate a seizure violated Krein's Fourth Amendment Rights. Therefore, the District Court could make no finding of qualified immunity, citing *Pena v. Porter*, 316 F. App'x. 303, 310 (4th Cir. 2009) "The district court found that there were genuine issues of material fact precluding summary judgment on Pena's excessive force claim regarding the first two shots fired by Officer Porter. Until these issues could be resolved, the district court held

that it was unable to rule on the issue of qualified immunity with respect to this claim. We agree." J. A. 88, 89.

Finally, when analyzing what an "objectively reasonable" officer would have done in the situation presented to Trooper Price, it is notable that another, presumably reasonable officer was present and facing the same circumstances, and did not feel it necessary to shoot Stephen Krein, even though he would later claim that Price's life had been in danger. J.A. 52, 57.

### b. It was well established on the day of the shooting that deadly force may not be used to effectuate a misdemeanor arrest.

It is well-settled that an officer may generally not use deadly force on a misdemeanant in order to prevent him from fleeing. This has been the common law throughout the 20th century, as noted by *Tennessee v. Garner*. 15, *citing Holloway v. Moser*, 193 N.C., at 187, 136 S.E. at 376; *State v. Smith,* 127 Iowa at 535, 103 N.W. at 945.

However, because the designation of "misdemeanor" does not mean that a crime is not violent, an officer may be justified in shooting a fleeing misdemeanant if that individual poses an immediate danger to the officer or another person[4].

---

[4] In their brief, appellants point out that Price had knowledge that Krein had attempted to "run over" other troopers in the preceding weeks. However, if the appellants want to look to what Price knew about Stephen Krein's history, then we must also consider that Price knew of Krein's propensity to flee and avoid capture. If appellants argue that Price acted out of fear for his and Snyder's safety based on

Jurisprudence has historically given officers a wider latitude in using force to capture felons, but whether it is a misdemeanor or felony suspect, the officer must have an objectively reasonable belief that the individual poses an immediate threat to himself or others before using deadly force to stop him or her.

Appellants' brief makes a side-by-side comparison of the facts of this case with those of *Waterman v. Batten*, 393 F.3d 471 (4th Cir. 2005). *Waterman* also involved the shooting of a misdemeanor suspect inside his vehicle by police[5]. Some of the shots were made as the driver was proceeding in the direction of law enforcement in front of him, and others not until he had passed the officers with no more in his path. This Court held in *Waterman* that the second set of shots, fired after the vehicle had passed the officers, were not objectively reasonable.

There were no officers in the path of Stephen Krein's truck when Price shot him. It would be a physical impossibility for the officer to have shot through the passenger window and hit Krein in the right side of the head if he had not been at the right hand side of the truck, and it is undisputed that Trooper Snyder was at the

---

knowledge of past events, then Krein can likewise argue that Price acted out of fear that Krein would get away once more.

[5]Appellee concedes that Waterman's crime, speeding, is less severe than those for which Krein was wanted; however, the severity of the specific misdemeanors forms only one part of the overall excessive force analysis.

driver's side door.[6] Though the entire body of the truck and its bed had not passed by the troopers, the danger had. Unless the truck suddenly and inexplicably lurched sideways, neither Snyder or Price was in danger of being hit by the vehicle when the second shot was fired. They were in danger only of losing their chance to finally arrest Stephen Krein.

Appellants argue that even if Price was out of the path of the truck, he had moved out of the way just a second or two before firing the shot and did not have time for thoughtful consideration to discern that the threat was over. A. B. at 44. This, however, is a factual determination that is not in the purview of this interlocutory appeal. The District Court has already found that it cannot make the determination that the officer's actions were objectively reasonable based upon the evidence.

Appellants also argue that because these exact circumstances, down to the exact positions and locations of the parties involved, have not presented themselves in an excessive force case before, the officer had no reason to know that his conduct was unlawful. This argument is misplaced. Though the case law demands that the right claimed by the plaintiff be more specific then simply a

---

[6]The passenger side window was the only window broken by the bullet. The windshield, driver's window, and back glass remained intact. Snyder describes Price as standing at a 45-degree angle from the front right of the truck at the time of the second shot. How the bullet would have turned in order to hit Krein in the side of the head is unexplained.

15

claim of an objectively unreasonable use of force, it does not require the specificity that appellants suggest. The exact conduct does not have to have been previously ruled unconstitutional or illegal in order to find that the officer should have known that it was. "Notice does not require that the 'very action in question has previously been held unlawful,' it does mean that 'in the light of pre-existing law the **unlawfulness must be apparent**". *Robles v. Prince George's County*, 302 F.3d 262, 269 (4th Cir. 2002) quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Here, the plain issue is that Trooper Price shot a fleeing misdemeanant suspect without any objectively reasonable belief that he was an immediate danger to anyone at the scene or elsewhere. That is the specific action which Trooper Price would have known to be illegal, based on long-standing case law.

## <u>CONCLUSION</u>

In sum, Stephen Krein claims that Trooper Price and the West Virginia State Police violated his well-established Fourth Amendment Right against unreasonable seizure. Trooper Price used excessive force to accomplish the seizure. His use of excessive force, **deadly force to capture a misdemeanor suspect**, was objectively unreasonable in light of the circumstances. Appellant Price was on a manhunt for Krein, who was sought for several misdemeanor crimes. Price found him, and when it became evident that Krein was going to once again elude capture, he shot him to prevent his escape.

16

The District Court declined to grant qualified immunity and denied summary judgment, finding that the facts, construed in the light most favorable to the Plaintiff, did not clearly support a finding of objective reasonableness. In reaching its decision, the District Court considered not only the evidence of Price's intentions, but also of the placement of the parties at the scene and the physical evidence such as the hole in the passenger side window. Despite his claims that the shot was intended to be in defense of himself, Trooper Snyder, and others, the District Court found that the evidence suggests any threat had passed when Price pulled the trigger for the second time. The District Court's findings of fact can not be reviewed by this Court on an interlocutory appeal.

Based upon the foregoing, appellee Stephen Krein respectfully requests that this Honorable Court DENY the appeal**,** and for all other such relief as this Court deems just and proper.

Respectfully submitted,

STEPHEN S. KREIN

By: /s/ Richelle K. Garlow
        *Counsel*

Richelle K. Garlow, Esq. (WV #9662)
Michael T. Clifford, Esq. (WV #750)
LAW OFFICE OF MICHAEL T. CLIFFORD
723 Kanawha Blvd. E.
Union Building, Ste. 1200
Charleston, WV 25301
T: (304) 720-7660
F: (304) 720-7753

*Counsel for Appellee*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 13-1877        **Caption:** Stephen Krein v. L.W. Price

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓] this brief contains ____4,190____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓] this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2010 [*identify word processing program*] in Times New Roman, 14pt [*identify font size and type style*]; **or**

[ ] this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Richelle K. Garlow

Attorney for Stephen Krein

Dated: 01/06/2014

# CERTIFICATE OF SERVICE

I certify that on  01/06/2014          the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:


Michael D. Mullins (W. Va. Bar #7754)
Robert L. Bailey (W. Va. Bar #8902)
707 Virginia St. E, Suite 715
P.O. Box 1588
Charleston, WV  25326-1588
P: (304) 353-8000
F: (304) 353-8180

Counsel for Appellants


/s/ Richelle K. Garlow                                        01/06/2014
_____          _____
            Signature                                                    Date